39 F.3d 1190
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WESTINGHOUSE HANFORD CORPORATION, Plaintiff-Appellee,
v.
HANFORD ATOMIC METAL TRADES COUNCIL, Defendant-Appellant.
 No. 93-35895.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1994.
Decided Nov. 2, 1994.
 
 Before: LAY,* TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is an appeal from the district court's order granting summary judgment and vacating an arbitrator's award on the ground that the award was against public policy. The district court had jurisdiction under 29 U.S.C. Sec. 185. We have jurisdiction to review the district court's final order under 28 U.S.C. Sec. 1291. Hanford Atomic Metal Trades Council ("the Union") appeals from the district court's grant of summary judgment to Westinghouse Hanford Company ("Westinghouse").
 
 
 3
 Several thousand employees at the Department of Energy's ("DOE") Hanford Nuclear Reservation ("Hanford") belong to the Union. By contracting with outside employers, DOE ensures the nuclear plant and related facilities are properly operated and maintained. Westinghouse is a contractor to DOE and does the work that is not covered by the Davis-Bacon Act,[1] while Kaiser Engineers Hanford ("Kaiser") does the work that is covered. Prior to 1989, Westinghouse made the original recommendation as to whether a particular task involved covered or uncovered work. DOE made the final decision, guided by federal regulations.
 
 
 4
 In August of 1988, DOE determined a certain bridge at Hanford needed repainting because of graffiti. The Code of Federal Regulations states that "painting which is closely integrated within operation and maintenance activities" is not covered work. 48 C.F.R. Sec. 922.471(f) (1988). The repainting was not part of any of Westinghouse's regular maintenance programs. Westinghouse recommended the repainting be considered covered work, but that in the future it should be scheduled for regular maintenance. DOE determined the repainting work was covered, but later agreed that future painting should be scheduled as part of regular maintenance. DOE contracted with Kaiser to do the repainting.
 
 WESTINGHOUSE I
 
 5
 A Westinghouse Union painter and a Chief Steward of the Union filed a grievance. The parties failed to resolve it and the dispute moved to final arbitration as their Collective Bargaining Agreement ("Agreement") provided. Westinghouse then decided the dispute was not arbitrable because DOE contracted the work to Kaiser, and DOE was not party to the Agreement. Westinghouse filed a complaint in federal court under section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), seeking to halt the arbitration and to get a declaration that it owed no damages. The Union counterclaimed for an order compelling arbitration and attorney fees. In February 1990, the district court held that the dispute was not arbitrable, that the court lacked subject matter jurisdiction to give Westinghouse a declaratory judgment on damages, and denied the Union's request for attorney fees. The Union appealed.
 
 
 6
 In Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513 (9th Cir.1991) [hereinafter Westinghouse I ], this court held the grievance was arbitrable, reversing the district court and remanding for an order compelling arbitration. The court noted that " 'where the contract contains an arbitration clause, there is a presumption of arbitrability.' " Id. at 517 (quoting A.T. & T. Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)).
 
 
 7
 The heart of the grievance was that Supplementary Agreement No. 6 to the Agreement stated how Westinghouse should approach decisions involving the contracting out of work the Union could possibly perform. The portion of Supplement 6 at issue states:
 
 
 8
 Westinghouse Hanford Company confirms its intent to maintain a work force consistent with scheduled requirements, and under those conditions, to make every effort, consistent with our prime contract with the DOE and other legal requirements, to provide regular employment for its bargaining unit employees before work is contracted outside.... (emphasis added).
 
 
 9
 The Union claimed the interpretation or application of Supplement 6 was at issue in the dispute, that is, that Westinghouse should "make every effort" to provide work for its Union members, including when it makes Davis-Bacon recommendations. Westinghouse disagreed. This court determined Westinghouse carried the burden of proving the parties "did not intend to arbitrate the grievance." Westinghouse I at 518. Westinghouse could show no exclusionary language in the Agreement to prove the parties did not intend to arbitrate this kind of dispute.
 
 
 10
 In Westinghouse I, this court relied on United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960), and held the judicial function was limited to the narrow question of whether the claim, on its face, was governed by the contract. Because the grievance clearly involved Supplement 6, the court found it subject to arbitration.
 
 
 11
 We further held that federal administrative regulations guide DOE's Davis-Bacon determinations, and that those determinations cannot be questioned by an arbitrator. Nevertheless, we reasoned, arbitrability was not thereby precluded because the arbitrator could consider whether Westinghouse had made every effort to influence DOE's determination in ways favorable to the Union. Westinghouse I, 940 F.2d at 522. We suggested, without ruling out other possibilities, that Supplement 6 might require Westinghouse to give the Union a chance to present its position on whether work was covered by Davis-Bacon before making a recommendation. Id. Rejecting Westinghouse's concern that the arbitrator might impose obligations on Westinghouse which would distort its Davis-Bacon recommendations, we determined other language of Supplement 6 prevented this outcome by limiting Westinghouse's obligation to the Union by its " 'contract with the DOE and other legal requirements.' " Id. at 523 (quoting Supplement 6). The parties were directed to submit their claim to arbitration.
 
 THE ARBITRATION AWARD
 
 12
 The arbitrator determined Supplement 6 applied to Westinghouse's Davis-Bacon recommendations and that Westinghouse had violated it. The arbitrator found Westinghouse decided the repainting was covered work primarily because Westinghouse had not previously scheduled the bridge for regular maintenance, thus making its own failure the basis of its recommendation. The arbitrator found further evidence of Westinghouse's failure to meet its contractual duty to the Union by its recommendation that repainting become a scheduled maintenance (uncovered) activity in the future. No federal regulation required the work be deemed uncovered. That graffiti removal was the impetus to repaint the bridge was irrelevant because nothing else other than work normally done for repainting was required. The arbitrator ordered Westinghouse to pay $20,160.00 to 35 Union painters as compensation for the earnings the painters would have received, had they done the repainting.
 
 
 13
 Westinghouse thereafter filed suit in district court, alleging the award void on numerous grounds. The two most important grounds were: First, that the award was based on the arbitrator's own interpretation of the Davis-Bacon Act and her finding that DOE's Davis-Bacon decision was flawed; and second, that her interpretation of the agreement violated the public policy expressed in the Davis-Bacon Act. The parties filed cross motions for summary judgment and the district court granted Westinghouse's motion and denied the Union's.
 
 
 14
 The district court held the arbitrator could legitimately consider the Davis-Bacon Act and had not used the Act to add requirements to the Agreement. The court stated the arbitrator had not concluded the final Davis-Bacon determination by DOE was improper, only that a different decision would have been made had the repainting been scheduled for regular maintenance. From the standpoint of the Agreement, these findings were entirely within the arbitrator's jurisdiction. From the standpoint of public policy however, the district court deemed the award objectionable.
 
 
 15
 DOE had adopted Westinghouse's Davis-Bacon recommendation and that meant, according to the court, that the arbitrator had to consider the recommendation to have been correct. The court said the arbitrator's finding that Westinghouse's Davis-Bacon recommendation was not supported by Davis-Bacon regulations violated the established rule that a federal agency's Davis-Bacon determination cannot be "second-guessed." The court noted that when we remanded the case, we stated "the arbitrator cannot question DOE's final determination that the painting of the bridge constituted Davis-Bacon work." Westinghouse I, 940 F.2d at 522. The arbitrator assessed damages based on what Union members would have earned had they painted the bridge instead of having done other work. The court reasoned that because DOE determined Union members could not paint the bridge, the award in effect, contradicted DOE's final determination. The court vacated the arbitrator's award and remedy and the Union appeals, claiming the award did not violate the Davis-Bacon Act.
 
 DISCUSSION
 
 16
 The standard for reviewing the district court's order vacating an arbitration award under the public policy exception is de novo. W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983). The party seeking to invalidate an award based on public policy must prove the award violates a "well defined and dominant" policy, "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " W.R. Grace v. Rubber Workers, 461 U.S. 757, 766 (1983) (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)). In Stead Motors v. Automotive Machinists Lodge 1173, 886 F.2d 1200, 1213 (9th Cir.1989) (en banc) (plurality opinion), cert. denied, 495 U.S. 946 (1990), this court observed that the inquiry a court must make is whether a well-defined public policy bars the enforcement of the award made.
 
 
 17
 The Union notes that in Westinghouse I, 940 F.2d at 522, we cited the Idaho Supreme Court in Oil, Chemical & Atomic Workers Int'l Union, Local 20652 v. EG & G Idaho, Inc., 769 P.2d 548 (Idaho 1989), with approval. That case involved the arbitrability of whether EG & G had used its best efforts to get favorable Davis-Bacon decisions for a union. The Union contends the issue under Supplement 6 is whether Westinghouse used its best efforts in making Davis-Bacon recommendations, not whether DOE was right or wrong in its decision. The Union argues the district court erred in holding the arbitrator could not review the merits of Westinghouse's recommendations. The award does not violate any specific provisions of the Davis-Bacon Act.
 
 
 18
 The Union contends the only basis the district court has for saying an agency's Davis-Bacon decision cannot be second guessed was its reference to Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 784 (1981), where the Court said it would be "inappropriate for a court to substitute its judgment for that of the contracting agency in a private action brought after the contract was let." In Coutu, the plaintiff sought to recover the net difference between what he had been paid for his work and the Davis-Bacon rate he would have been paid had the Atomic Energy Commission not erred in making a coverage determination. Westinghouse claims that Coutu could have argued, as the Union now does, that he did not seek reversal of the Atomic Energy Commission's decision, only money damages. Arguing that the arbitrator's decision does not affect DOE, Westinghouse claims, substitutes the form of the award for its substantial effects.
 
 
 19
 We read Coutu as only holding no private right of action exists under Davis-Bacon. It does not announce a policy against private parties challenging federal agencies' Davis-Bacon Act determinations after the work has been performed. Although post-contract challenges to Davis-Bacon wage determinations can affect the costs government agencies and contractors incur, Westinghouse cannot evade an arbitrator's award by arguing that the cost of satisfying the award will be passed on to DOE. The arbitrator's award was for Westinghouse's failure to use its best efforts and had nothing to do with DOE. The award in no way has the effect of retroactively making the painting of the bridge uncovered work, it simply measured damages by the overtime wages painters would have earned.
 
 
 20
 The record supports the district court's conclusion that the arbitrator did not find DOE erred in its coverage determination. The arbitrator stated that
 
 
 21
 neither of the Company's [Westinghouse's] rationale for its 1988 recommendation that the [Yakima bridge] painting project be contracted out rather than done by Bargaining Unit employees in fact justified or supported that recommendation, under Davis-Bacon standards. Not only was the Company not required by those standards to make that recommendation, but, absent some support for it, it was obligated by Supplement 6 not to make that recommendation.
 
 The arbitrator goes on to conclude that
 
 22
 but for the fact that the [Yakima bridge] painting project was not part of [a routine, cyclical preventive maintenance program], the [DOE] would have determined that the work was non-covered....
 
 
 23
 Finding of Fact 16 of the Arbitrator's Award lists what DOE took into account in making its coverage decision, and the basis for its decision. Finding of Fact 17 quotes the Chief of Contractor Industrial Relations as stating DOE does not "rubber-stamp" contractor explanations. Thus, while the arbitrator did not say DOE decided wrongly, she did "review" DOE's determination and concluded it would have been otherwise had Westinghouse met its duty to the Union. The arbitrator concluded that DOE classifies scheduled work differently from unscheduled work, and Westinghouse was remiss in not scheduling the repainting.
 
 
 24
 The award does not suggest DOE did something wrong. The district court thought the award did. The court appeared to reason that because DOE adopted Westinghouse's recommendation, the recommendation must be deemed to have been correct. The arbitrator, however, did not say the recommendation was incorrect, she only said it was based on Westinghouse's failure to schedule the work. For work that was not part of a regular maintenance program, the recommendation would, presumably, have been correct.
 
 
 25
 Westinghouse I did direct the arbitrator not to question DOE's determination that the work of painting the bridge was covered. The district court essentially interpreted that to mean the arbitrator was required to assume that regardless of anything Westinghouse might have done, the work would have been deemed covered and Union painters would never have painted it. In our view, that interpretation essentially eviscerates Westinghouse I. We understand the law of the case to allow for an arbitrator to find that Westinghouse did not do all that its contract with the Union required it to do. She did not question what DOE actually did, which Westinghouse I prohibited, but she did consider what DOE might have done had Westinghouse scheduled the work as she thought its contract with the Union obligated it to do. If Westinghouse had scheduled the work, DOE would have been determining whether scheduled work was covered, a different question than it actually decided. The arbitrator did not find DOE made a mistake in adopting a faulty recommendation; she found that faced with the repainting project as scheduled work, DOE would likely have decided it was not covered. Having decided that, she should be left to figure out reasonable damages, measured in any way she determined was appropriate, given the contract between the parties.
 
 
 26
 We reverse the district court's grant of summary judgment in favor of Westinghouse and remand with instructions to reinstate the arbitrator's award.
 
 
 27
 REVERSED and REMANDED, with instructions.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Act requires, among other things, federal construction contractors to pay their employees in accordance with the wage rates prevailing in the area of construction. 40 U.S.C. Sec. 276(a)